**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **8:11CR98** |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **FINDINGS AND** |
| | ) | |
| **ANTONIA IGNACIO-LORENZO,** | ) | **RECOMMENDATION** |
| | ) | |
| **Defendant.** | ) | |

This matter is before the court on the Motion to Suppress (Filing No. 33) filed by defendant Antonia Ignacio-Lorenzo (Ignacio-Lorenzo).  Ignacio-Lorenzo is charged in the Indictment with the use of identification documents, knowing such documents were not lawfully issued for her use, for the purpose of satisfying a requirement of an employment verification system (Count I), in violation of 18 U.S.C. § 1546(b); the false representation of a Social Security number not assigned to her with the intent to deceive (Count II), in violation of 42 U.S.C. § 408(a)(7)(B); and the false claim of United States citizenship (Count III), in violation of 18 U.S.C. § 911.  **See** Filing No. 19.  Ignacio-Lorenzo seeks to suppress all evidence and statements made by her to law enforcement on April 8, 2011, in Omaha, Nebraska.  **See** Filing No. 33.

An evidentiary hearing was held on Ignacio-Lorenzo's motion on June 14, 2011.  Ignacio-Lorenzo was present for the hearing along with her counsel, Assistant Federal Public Defender David R. Stickman.  The United States was represented by Assistant United States Attorney Christopher L. Ferretti.  Laura Garcia-Hein, a certified Spanish language interpreter, served as the interpreter for the hearing.  During the hearing, the court heard the testimony of United States Secret Service (USSS) Special Agent Brock Farris (Agent Farris) and United States Immigration and Customs Enforcement (ICE) Officer Patrick Burns (Officer Burns).  A transcript (TR.) of the hearing was prepared and filed on June 20, 2011 (Filing No. 44).

**FINDINGS OF FACT**

The Omaha Police Department (OPD) received a complaint from Grasiela Diaz (Diaz) of Colorado regarding a potential identity theft (TR. 6). The OPD contacted the Omaha office of the USSS, which investigates crimes including identity theft, counterfeit, embezzlement, and various other white collar crimes (TR. 5-6). Agent Farris was assigned to the case (TR. 6). Agent Farris completed a records check in Nebraska and determined Diaz's Social Security number was being used at an Omaha, Nebraska, business, Greater Omaha Packing (GOP) (TR. 7). He contacted GOP and received the employment verification I-9 forms for the name "Grasiela Diaz" before contacting Diaz (TR. 7-8). Diaz stated she had been notified by the Internal Revenue Service (IRS) that her refund would not be processed due to withholding problems because she was employed in the State of Nebraska, however Diaz stated she did not work in Nebraska nor had ever been to Nebraska (TR. 8). Agent Farris verified with Diaz the information about where she was born and where her Social Security number was issued, then confirmed the information with the Social Security Administration (TR. 8-9).

On April 7, 2011, Agent Farris filed an affidavit for a criminal complaint for the misuse of a Social Security number and obtained an arrest warrant for a Jane Doe using the name "Grasiela Diaz" (TR. 9-10). Agent Farris contacted ICE Officers Burns and Jason Meyen (Officer Meyen) to assist him in executing the warrant since it is common for an arrestee of this offense to be an illegal alien and Agent Farris does not speak Spanish (TR. 10-12). Agent Farris sent the employment verification forms to ICE, and Officers Burns and Meyen determined there was a high probability the arrestee would be an illegal alien (TR. 30, 32).

On April 8, 2011, Officers Burns and Meyen accompanied Agent Farris in executing the arrest warrant at GOP (TR. 13, 32). Agent Farris and Officers Burns and Meyen met with the human resources manager at GOP and asked her to bring the person working under the name "Grasiela Diaz" to a conference room (TR. 11, 15). Ignacio-Lorenzo was brought into the conference room (TR. 15). Agent Farris and Officers Burns and Meyen showed Ignacio-Lorenzo their badges and identified themselves as federal agents and officers (TR. 15-17, 35). In Spanish, Officer Burns asked Ignacio-Lorenzo her name, to which she replied "Antonia Ignacio-Lorenzo" (TR. 17, 40). Officer Burns asked where she was from, to which she replied "Mexico" (TR. 17, 35, 40). He asked if she had any papers

2

to legally be in the United States, to which she said "no" (TR. 17, 35, 40). At that point, Officer Burns, at Agent Farris' request, read Ignacio-Lorenzo her ***Miranda***[1] rights in Spanish (TR. 17, 35, 40). Ignacio-Lorenzo responded in Spanish that she did not want to make any statements (TR. 17, 36). Officer Burns then asked her questions regarding the care of her children (TR. 17-18, 25, 36). Agent Farris had Officer Burns ask Ignacio-Lorenzo if she had any property in her locker, if they could retrieve it, and look through it to find her real ID, to which she replied "yes" to each question (TR. 18-19, 37). The locker contained a Mexican consulate card and a Mexican driver's license under the name of Antonia Ignacio-Lorenzo, a GOP identification card in the name of Grasiela Diaz with Ignacio-Lorenzo's photograph, a purse, and some clothing (TR. 19, 38-39). Agent Farris then informed Ignacio-Lorenzo she was going to the Douglas County Jail (TR. 20).

## LEGAL ANALYSIS

Ignacio-Lorenzo seeks to suppress both the statements she made to Officer Burns and the search of her locker. Ignacio-Lorenzo contends she was in custody and subjected to custodial interrogation prior to receiving her ***Miranda*** rights, and therefore her statements should be suppressed. Furthermore, Ignacio-Lorenzo contends the locker search should be suppressed as fruit of the unwarned statements and as a violation of her right to remain silent. In response, the United States first argues the encounter with Ignacio-Lorenzo was an investigative detention supported by a reasonable articulable suspicion of criminal activity. Second, the United States argues the ICE officers asked Ignacio-Lorenzo for routine biographical information that was not solicited as part of an interrogation intending to obtain incriminating information. For the reasons stated below, the court finds as follows: Ignacio-Lorenzo's statements made to Officer Burns regarding her country of origin and immigration status should be suppressed, but the search of her locker should not be suppressed.

## A.      Statements made to Officer Burns

It is well settled that a law enforcement official is required to advise an individual of his or her ***Miranda*** rights before questioning if that individual is in custody. ***United States***

---

[1] ***Miranda v. Arizona***, 384 U.S. 436, 444 (1966).

*v. Elzahabi*, 557 F.3d 879, 883 (8th Cir. 2009). "An individual is in custody [for purposes of **Miranda**] when placed under formal arrest, or when his or her freedom is restricted to a degree akin to formal arrest." *Id.* (**citing *United States v. Ollie*, 442 F.3d 1135, 1137 (8th Cir. 2006)**). In other words, whether an individual is "in custody turns on whether, under the totality of the circumstances he faced at the time of his questioning, a reasonable person in his position would have felt free to end the interrogation and leave." *Elzahabi*, 557 F.3d at 883.

The Eighth Circuit has identified the following six factors to consider when determining whether an individual is in custody:

> (1) whether the suspect was informed that he or she was free to leave and that answering [questions] was voluntary; (2) whether the suspect possessed freedom of movement; (3) whether the suspect initiated contact or voluntarily acquiesced; (4) whether strong-arm tactics or strategies were employed; (5) whether the atmosphere was police-dominated; or, (6) whether the suspect was placed under arrest at the end of questioning.

*Id.* (**citing *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990)**). Application of these factors is not mechanical and the issue of whether an individual is in custody "cannot be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly." *United States v. Czichrary*, 378 F.3d 822, 827-28 (8th Cir. 2004). From this principal it follows that the presence or absence of any one factor is not determinative on the issue. *Griffin*, 922 F.2d at 1347. Instead, a court must "examine the extent of the physical or psychological restraints placed on the suspect during interrogation in light of whether a 'reasonable person in the suspect's position would have understood his situation' to be one of custody." *Id.* (**quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)**).

In this case, Ignacio-Lorenzo was brought into the conference room with Agent Farris and ICE Officers Burns and Meyen. At that time, Agent Farris already had a warrant for Ignacio-Lorenzo's arrest, but did not execute that warrant until the conclusion of the interview. Immediately after the interview, Ignacio-Lorenzo was taken to Douglas County Jail. Under the totality of the circumstances, the court finds that Ignacio-Lorenzo was in

custody for purposes of *Miranda* when she was questioned by Officer Burns in the conference room.

A statement made while in police custody and in response to police interrogation or its "functional equivalent" is protected by the Fifth Amendment. *United States v. Withorn*, 204 F.3d 790, 796 (8th Cir. 2000) (**citing** *Miranda*, 384 U.S. at 444; *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)). Such a statement may be admissible against the defendant in criminal proceedings only when the statement was preceded by an advice of rights or *Miranda* warning. *Withorn*, 204 F.3d at 796. Generally, however, "[r]equests for routine information such as name and address, which is necessary for basic identification purposes, is not interrogation for purposes of *Miranda*." *United States v. McLaughlin*, 777 F.2d 388, 391 (8th Cir. 1985). The request for basic information is not interrogation under *Miranda*, even if the information turns out to be incriminating. *Id.*

With that said, "even if a routine booking question exception to *Miranda* were warranted, that exception should not extend to any booking question that the police should know is reasonably likely to elicit an incriminating response. . . ." *Pennsylvania v. Muniz*, 496 U.S. 582, 610-11 (1990) (plurality opinion) (**citing** *Innis*, 446 U.S. at 301). The focus should be on the perception of the suspect, not the intent of the police. *Id.* at 601. Moreover, "if the government agent should reasonably be aware that the information sought, while merely for basic identification purposes in the usual case, is directly relevant to the substantive offense charged," the question will be "subject to scrutiny" under *Miranda*. *United States v. Ochoa-Gonzalez*, 598 F.3d 1033, 1038 (8th Cir. 2010); **see** *United States v. Brown*, 101 F.3d 1272, 1274 (8th Cir. 1996) (noting the booking exception applied because the defendant's true name was not incriminating).

> Although it may be "a rare case . . . in which asking an individual his name, date of birth, and Social Security number would violate *Miranda*," there are situations where asking a person's name "might reasonably be expected to elicit an incriminating response," for example in an "arrest for impersonating a law enforcement officer or for some comparable offense focused on identity."

*United States v. Gomez-De la Cruz*, No. 10CR336, 2011 WL 883692, at *8 (D. Neb. 2011) (**quoting** *United States v. Reyes*, 225 F.3d 71, 77 (1st Cir. 2000) (noting in such scenarios,

the requested information is so clearly and directly linked to the suspected offense that we would expect a reasonable officer to foresee his questions might elicit an incriminating response from the individual being questioned)); **see _United States v. Bernal_**, No. 10CR338, 2011 WL 1103360, at *8 (D. Neb. 2011) (finding Fourth and Fifth Amendment protections applied because the immigration officers were investigating identity theft, as opposed to immigration offenses).

In this case, Ignacio-Lorenzo's true name, country of origin, and immigration status are directly linked to the suspected offense of identity theft. While Ignacio-Lorenzo concedes it was appropriate for the agent and officers to ask for her name (TR. 45), Agent Farris and Officers Burns and Meyen should have known asking Ignacio-Lorenzo's country of origin and immigration status would elicit incriminating responses.

The government argues Officers Burns and Meyen, as ICE officers, have lawful authority to question Ignacio-Lorenzo about her immigration status without regard to **_Miranda_**. It is undisputed the "various protections that apply in the context of a criminal trial do not apply in a deportation hearing." **_I.N.S. v. Lopez-Mendoza_**, 468 U.S. 1032, 1039 (1984). However, unlike administrative proceedings, "[w]ith respect to a person charged with a criminal violation of the laws of the United States, the arresting [immigration] officer shall advise the person of the appropriate rights as required by law" at the time of the arrest, or as soon thereafter as practicable. **_United States v. Quintana_**, 623 F.3d 1237 (8th Cir. 2010) (**quoting** 8 C.F.R. § 287.3). Generally, while Officers Burns and Meyen may question Ignacio-Lorenzo about her immigration status for the purpose of an administrative arrest, they accompanied Agent Farris to assist in a criminal arrest warrant. The interrogation was clearly in the context of a criminal investigation for identity theft. See **_Bernal_**, 2011 WL 1103360, at *8; **_Gomez-De la Cruz_**, 2011 WL 883692, at *8. Ignacio-Lorenzo was therefore entitled to the protections of the Fourth and Fifth Amendment. Ignacio-Lorenzo's statements made to Officer Burns regarding her country of origin and immigration status before being advised of her **_Miranda_** rights should be suppressed.

**B.    Locker search**

Ignacio-Lorenzo argues by asking her to consent to a locker search, law enforcement violated her right to remain silent. "If the individual indicates in any manner, at any time

prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda*, 384 U.S. at 473-74. To "effectively cut off questioning, a suspect must indicate 'a clear, consistent expression of a desire to remain silent.'" *United States v. Johnson*, 56 F.3d 947, 955 (8th Cir. 1995) (**quoting** *United States v. Thompson*, 866 F.2d 268, 272 (8th Cir.1989)). "Once a person in custody has invoked his right to remain silent, law enforcement officers must scrupulously honor his assertion of that right." *Simmons v. Bowersox*, 235 F.3d 1124, 1131 (8th Cir. 2001) (**citing** *United States v. Cody*, 114 F.3d 772, 775 (8th Cir. 1997) (**construing** *Michigan v. Mosley*, 423 U.S. 96, 104 (1975))).

There is no doubt here Ignacio-Lorenzo invoked her right to remain silent. Both Agent Farris and Officer Burns testified that once Ignacio-Lorenzo was advised of her *Miranda* rights, she indicated to the officers she did not want to answer any more questions. This was a clear expression of a desire to remain silent.

While Ignacio-Lorenzo invoked her right to remain silent, Agent Farris and Officer Burns did not violate that right when they asked her to consent to a locker search. "The [Fifth Amendment] privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." *Schmerber v. California*, 384 U.S. 757, 761 (1966). "A consent to search is not a self-incriminating statement; it is not itself evidence of a testimonial and communicative nature." *United States v. Hidalgo*, 7 F.3d 1566, 1568 (11th Cir. 1993) (**quoting** *Smith v. Wainwright*, 581 F.2d 1149, 1152 (5th Cir. 1976)). Therefore, requesting to search is not interrogation within meaning of *Miranda*. *Cody v. Solem*, 755 F.2d 1323 (8th Cir. 1985); **see** *United States v. Shlater*, 85 F.3d 1251 (7th Cir. 1996); *United States v. Rodriguez-Garcia*, 983 F.2d 1563 (10th Cir. 1993). Agent Farris and Officer Burns did not violate Ignacio-Lorenzo's right to remain silent by asking her to consent to a locker search. **See** *Hidalgo*, 7 F.3d at 1568 (noting while consent led to introduction of incriminating physical evidence, there was no incriminating statement obtained after invoking the right to silence).

Further, consent to search the locker was not fruit of the original, illegally-obtained statements. The court "refuse[s] to extend the fruit-of-the-poisonous-tree doctrine to exclude physical evidence derived from a voluntary statement in the wake of a *Miranda*

violation." *United States v. Fleck*, 413 F.3d 883, 893 (8th Cir. 2005). "The exclusionary rule, . . . when utilized to effectuate the Fourth Amendment, serves interests and policies that are distinct from those it serves under the Fifth." *Oregon v. Elstad*, 470 U.S. 298, 3096 (1985) (**quoting** *Brown v. Illinois*, 422 U.S. 590, 602 (1975)). "Though *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it was knowingly and voluntarily made." *United States v. Villalba-Alvarado*, 345 F.3d 1007, 1010 (8th Cir. 2003) (**quoting** *Elstad*, 470 U.S. at 309). "Consent is voluntary 'if it was the product of an essentially free and unconstrained choice by its maker, rather than the product of duress or coercion, express or implied.'" *United States v. Lakoskey*, 462 F.3d 965, 973 (8th Cir. 2006) (**quoting** *United States v. Chaidez*, 906 F.2d 377, 380 (8th Cir. 1990)). "[E]ven persons who have been arrested and are in custody can voluntarily consent to [a] search." *Chaidez*, 906 F.2d at 382. Such "[v]oluntariness is a question of fact to be determined from all the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 40 (1996). The government bears the burden of proving voluntary consent to search by a preponderance of evidence. *United States v. Esquivel*, 507 F.3d 1154, 1159-60 (8th Cir. 2007). When determining whether the defendant's consent was voluntary, the court analyzes:

> (1) their age, (2) their general intelligence and education, (3) whether they were intoxicated or under the influence of drugs when consenting, (4) whether they consented after being informed of their right to withhold consent or of their *Miranda* rights, and (5) whether, because they had been previously arrested, they were aware of the protections afforded to suspected criminals by the legal system.

*Chaidez*, 906 F.2d at 381 (internal citations omitted). Furthermore, the court determines the environment in which consent was given by asking whether the person who consented:

> (1) was detained and questioned for a long or short time, (2) was threatened, physically intimidated, or punished by the police, (3) relied upon promises or misrepresentations made by the police, (4) was in custody or under arrest when the consent was given, (5) was in a public or a secluded place, or (6) either objected to the search or stood by silently while the search occurred.

*Id.* at 381 (internal citations omitted).

The court finds under the totality of circumstances, Ignacio-Lorenzo consented to the search of her locker.  After questions regarding her identity and the care of Ignacio-Lorenzo's children, Officer Burns, at the request of Agent Farris, asked Ignacio-Lorenzo if she had any property in her locker, and if they could look through it to find her real ID. Ignacio-Lorenzo said yes to both questions.  She had already been advised of her rights under *Miranda*.  There is no evidence of coercion or misrepresentations made by Agent Farris or the ICE officers.  Moreover, Ignacio-Lorenzo did not express any objections while the search occurred.  Accordingly,

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

Antonia Ignacio-Lorenzo's Motion to Suppress (Filing No. 33) be granted with respect to her responses to the questions about country of origin and immigration status, and denied in all other respects.

**ADMONITION**

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation.  Failure to timely object may constitute a waiver of any such objection.  The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 14th day of July, 2011.

BY THE COURT:

 s/ Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.